**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| JOSH DRAFTZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYLIION HOLDINGS CORP., THOMAS HEALY, and JON PANZER,<br><br>Defendants. | **Case No: 1:26-cv-02369**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Josh Draftz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Hyliion Holdings Corp. ("Hyliion" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Hyliion securities between May 12, 2026 and June 23, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants'

violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act"). [1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Hyliion securities during the Class Period and was economically damaged thereby.

---

[1] Unless otherwise stated, all emphasis is added and internal citations are omitted. Formatting from the Report (as defined below) may be altered from the original.

7. Defendant Hyliion purports to be a "developer of modular power plant technology[.]"

8. Defendant Hyliion incorporated in Delaware and its head office is located at 1202 BMC Drive, Suite 100, Cedar Park, Texas, 78613. Hyliion securities trade on the NYSE American exchange ("NYSE") under the ticker symbol "HYLN."

9. Defendant Thomas Healy ("Healy") served as the Company's Chief Executive Officer ("CEO") at all relevant times.

10. Defendant Jon Panzer ("Panzer") served as the Company's Chief Financial Officer at all relevant times.

11. Defendants Healy and Panzer are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

13. Hyliion is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Hyliion under *respondeat superior* and agency principles.

15. Defendant Hyliion and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements Issued During the Class Period

16. On May 12, 2026, Hyliion issued a press release entitled "Hyliion Holdings Reports First-Quarter 2026 Financial Results" (the "Q1 Press Release"). The Q1 Press Release stated, in part, the following regarding a partnership with VFG Holdings, LLC ("VFG") by means of a letter of intent (the "LOI") to provide power modules to support data center applications, which was later characterized by Defendant Healy in the same press release as a "partnership":

> ***Hyliion and VFG Holdings, LLC*** entered into a non-binding Letter of Intent ("LOI") establishing a strategic partnership focused on deploying KARNO Power Modules for ***advanced next-generation data center applications***. ***The parties intend to pursue deployment opportunities totaling up to 250 KARNO Cores, or 50 megawatts of power generation capacity, over the next five years***. VFG develops turnkey data center solutions, including power infrastructure, compute systems, site development, and financing. The parties expect to provide additional updates regarding the collaboration and initial deployment opportunities in future periods.

17. The Q1 Press Release included the following statement attributed to Defendant Healy:

> ***The first quarter delivered tangible progress*** against the deployment-and-commercialization plan we outlined for 2026, including completion of UL non-recurring testing on the KARNO Power Module, ***a new data center partnership with VFG Holdings,*** demonstrated multi-fuel flexibility, and four times the revenue of the prior quarter[.] Our focus for the balance of the year remains on execution as we work toward commercialization of the KARNO Power Module by year end.

18. The statements in ¶¶ 16-17 were materially false and misleading at the time they were made because they materially overstated the potential prospects of the VFG partnership, considering that VFG was only formed in January 2026, appears to have only around four employees, and has not publicized *any* business activity aside from announcing the partnership with Hyliion.

19. On May 13, 2026, Hyliion held its Q1 2026 earnings call (the "Q1 Call"). On the Q1 Call, Defendant Healy quickly noted in his opening remarks that Hyliion had "signed a new data center partnership with VFG Holdings," then stated the following later about the significance of the partnership with VFG:

> ***We are also seeing strong and growing demand from data center customers. The need for on-site fuel flexible power generation is becoming increasingly important, and we are actively engaging with the leading players in the market. In that context, I am pleased to announce a new strategic partnership with VFG Holdings***. Hyliion and VFG holdings have executed a nonbinding letter of intent, to deploy up to 250 KARNO cores or approximately 50-megawatts of power over the next 5 years. ***VFG is a developer of advanced next-generation data centers and offers turnkey solutions, including power, infrastructure, compute and financing***. ***The team at VFG is comprised of industry veterans from some of the largest data center companies and is planning multiple gigawatts of power production in the years ahead***. Under this partnership, the parties plan to deploy KARNO Power Modules at VFG's data center sites to demonstrate the unique benefits of the KARNO platform, including lower-than-grid electricity production costs true fuel-agnostic operation and direct 800-volt DC integration. We plan to share more details on the partnership in the periods ahead. The LOI between Hyliion and VFG is subject to the execution of a definitive purchase agreement.

20. The statement in ¶19 was materially false and misleading at the time it was made because, as stated above, contrary to Defendant Healy's representations, VFG does not appear to have conducted meaningful business activity. Further, the representation that the "team at VFG is comprised of industry veterans" and is "planning multiple gigawatts of power production in the years ahead" materially overstated VFG's business credentials and prospects considering that it (a) had only been formed in January 2026, and (b) only appears to have four employees, calling into question VFG's business prospects.

21. On the material announcement, Hyliion common stock appreciated from $2.68 on May 12, 2026 (prior to the beginning of the Class Period) to $3.59 on May 13, 2026. By May 15, 2026, Hyliion common stock had appreciated to $4.67 a share, reflecting positive investor sentiment as a result of Defendants' materially false and misleading statements. On May 19, 2026, Hyliion stock traded between $3.81 and $4.23 per share, materially over the $2.68 closing price on May 12, 2026.

22. Using 10b5-1 plans, Defendants and other corporate officers timed the VFG LOI announcement to reap unjust financial rewards with strategically timed stock sales, which were to occur within a few days of the VFG announcement. This indicates that Defendants' positive statements about the prospects of Hyliion's partnership with VFG were knowingly false at the time they were made, because Defendants timed the sales before it was reasonably likely for third parties to investigate VFG and whether the relationship between VFG and Hyliion was likely to bear material financial results for Hyliion.

23. On May 19, 2026, Hyliion filed a Form 144 with the SEC noting that Defendant Healy had sold 30,000 shares, worth an aggregate value of $125,000 pursuant to a 10b5-1 plan.

24. On May 19, 2026, Hyliion filed a Form 144 with the SEC noting that Defendant Panzer had sold 15,000 Hyliion shares for $61,000 pursuant to a 10b5-1 plan.

25. On May 19, 2026, Hyliion filed a Form 144 with the SEC noting that Govindaraj Ramasamy had sold 15,000 shares for $61,000 pursuant to a 10b5-1 plan.

26. On May 19, 2026, Hyliion filed a Form 144 with the SEC noting that Jose Oxholm had sold 15,000 shares for $61,000 pursuant to a 10b5-1 plan.

27. On May 19, 2026, Hyliion filed a Form 144 with the SEC noting that Joshua Mook had sold 15,000 shares pursuant to a 10b5-1 plan.

28. The statements contained in ¶¶ 16-17, and 19 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) in order to cause rapid price appreciation in Hyliion stock, Defendants announced a deal with an entity that was very recently formed and does not appear to have any actual business operations; (2) the Individual Defendants timed the announcement and foregoing price appreciation to insider trade; and (3) as a result, Defendants' statements about Hyliion's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

29. On June 23, 2026, Pelican Way Research ("Pelican Way") issued a report entitled "Hyliion: A Glorified Science Project Who Has Continuously Failed to Meet Expectations And Is Now Throwing Around A Meaningless Deal." (the "Report"). To date, Hyliion has not responded to any aspect of the Report.

30. The Report stated that Pelican Way believed the announced LOI with VFG "is a sham because the counterparty (VFG Holdings, or legally VFG Tech Holdings, LLC) does not appear to have any substance." The Report noted that the "***VFG entity was registered just a few months ago in January 2026***."

31. The Report further noted that VFG's "website contains just two pages, a home page and a contact form, with no listed address." The undersigned counsel checked VFG's website and confirmed that, as of July 20, 2026, that statement is accurate.

32. The Report further noted that "[t]he man behind the entity, Jason Green, runs a [second company at the same time,]" further calling into question whether VFG is an "AI data center integrator" capable of the deal outlined in the Q1 Press Release.

33. The Report further noted that VFG only appears to have four employees. Counsel for Plaintiff reviewed VFG's LinkedIn page and confirmed that that was true as of July 20, 2026. The Report further noted that VFG's only post on its LinkedIn page was about the letter of intent with Hyliion, further calling into question whether it does any business at all.

34. The Report included the following images:






*Source*: VFG LinkedIn




35. The Report further showed the following images from VFG's website, which it described as "barely functioning," further calling into question whether it conducts meaningful business activities.



*Source*: VFG Homepage

*Source*: VFG Contact Form

36. The Report showed the following image of when vfgholdings.com was registered as a domain, in December 2025. This further demonstrated that if VFG Holdings was not equipped to even have a fully functioning business website as of summer 2026, then any representation by Defendants that VFG was equipped to work with something as complex as data centers, was at minimum, reckless when made:



*Source*: WhoIs Data

37. The Report then included the following image detailing the business activities of Jason Green, the co-founder and CEO of VFG. In part, the Report highlighted how Mr. Green "appears to be running multiple companies at the same time," and how "Jason [Green's] other venture is only worth $2.8mm, ***we find it unlikely he could raise the hundreds of millions needed to pay Hyliion***."




38. Counsel for Plaintiff reviewed VFG's LinkedIn page, and saw that, as of July 20, 2026, the only post was an announcement of the partnership with Hyliion, at best calling into question whether Hyliion can expect to yield any value from a relationship with VFG but more realistically, calling into question whether VFG engages in meaningful business activity.

39. The Report further stated that Defendant Healy "appears to be a long-time promoter." The Report noted that Hyliion was brought public via SPAC in 2020 as an electric truck company, which was unsuccessful.

40. The Report noted that Pelican Way thinks "Hyliion's latest pivot is brought to you by Healy because he is an expert salesman, and in this case, we think he's selling investor's a second pipe dream after they got incinerated on the last deal."

41. The Report further noted that the "VFG deal is suspiciously timed right as Hyliion's cash pile is dwindling," demonstrating a further motive to announce a letter of intent to work on a data center deal with an entity wholly unequipped to operate or build a data center, stating as follows:

> We believe that the deal with VFG Holdings is conveniently timed right as the company's cash reserves [are] running lower. Currently, Hyliion sits with just ~$139.3mm in current assets according to their latest 10Q. ***Hyliion currently loses ~$50mm a year as of their FY25 10K, this means that the company has ~33 months left before they run out of cash, we think they will end up spending more cash as they make an attempt at commercialization***. In our experience, we have found that companies seem to like to dilute right around when they have ~18 months of cash left. We think right now, on the back of the dubious LOI which sent shares soaring is the opportune time to dilute shareholders in order to continuously line management's pockets and continue on the never-ending road of being a science project.

42. The Report then showed the following image, to illustrate the point:

| | | March 31, 2026 (Unaudited) |
|---|---|---|
| **Assets** | | |
| Current assets | | |
| Cash and cash equivalents | $ | 20,262 |
| Accounts receivable, net | | 3,026 |
| Inventory | | 1,919 |
| Prepaid expenses and other current assets | | 4,031 |
| Short-term investments | | 52,208 |
| Assets held for sale | | — |
| Total current assets | | 81,446 |
| | | |
| Property and equipment, net | | 38,494 |
| Operating lease right-of-use assets | | 2,963 |
| Other assets | | 990 |
| Long-term investments | | 66,858 |
| **Total assets** | $ | 190,751 |

*Hyliion sits on just ~$139mm in cash while burning ~$50mm a year and still needing to ramp up spending for supposed commercialization. We believe dilution is imminent.*

*Source*: Latest 10Q

43. On this news, the price of Hyliion stock fell $1.27 per share, or 17.2%, to close at $6.10 on June 23, 2026. The following day, Hyliion stock fell a further $1.18 per share, or 19.3%, to close at $4.92 on June 24, 2026.

44. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Hyliion securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors

of Hyliion, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

46. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Hyliion securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

47. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Hyliion;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused Hyliion to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of Hyliion securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

51. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Hyliion shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;
- As a public issuer, Hyliion filed periodic public reports;
- Hyliion regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press

releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Hyliion' securities were liquid and traded with moderate to heavy volume during the Class Period; and
- Hyliion was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

52. Based on the foregoing, the market for Hyliion securities promptly digested current information regarding Hyliion from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT I**
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

54. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or

deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Hyliion securities during the Class Period.

58. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Hyliion were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Hyliion, their control over, and/or receipt and/or modification of Hyliion's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Hyliion, participated in the fraudulent scheme alleged herein. To date, Hyliion has not provided a competing inference by responding to any aspect of the Report.

59. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material

statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Hyliion personnel to members of the investing public, including Plaintiff and the Class.

60. As a result of the foregoing, the market price of Hyliion securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Hyliion securities during the Class Period in purchasing Hyliion securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

61. Had Plaintiff and the other members of the Class been aware that the market price of Hyliion securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Hyliion securities at the artificially inflated prices that they did, or at all.

62. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

63. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Hyliion securities during the Class Period.

## COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

64. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. During the Class Period, the Individual Defendants participated in the operation and management of Hyliion, and conducted and participated, directly and indirectly, in the conduct of Hyliion's business affairs. Because of their senior positions, they knew the adverse non-public information about Hyliion's business practices.

66. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Hyliion's financial condition and results of operations, and to correct promptly any public statements issued by Hyliion which had become materially false or misleading.

67. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Hyliion disseminated in the marketplace during the Class Period concerning Hyliion's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hyliion to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Hyliion within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Hyliion securities.

68. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Hyliion.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: August 28, 2026

Respectfully submitted,

**CONDON TOBIN SLADEK SPARKS NERENBERG PLLC**

/s/ Stuart L. Cochran
Stuart L. Cochran
State Bar No. 24027936
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3804
Email: scochran@condontobin.com

*Liaison Counsel for Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: lrosen@rosenlegal.com
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Hyliion Holdings Corp..
The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis not to exceed one-third of the recovery and will advance all costs and expenses. All payments of fees and expenses shall be made only after Court review and approval. The Hyliion Holdings Corp. Retention Agreement provided to the Plaintiff is incorporated by reference herein and is effective, upon execution and delivery by The Rosen Law Firm P.A.

**First Name:** Josh
**Middle Initial:** L
**Last Name:** Draftz
**Mailing Address:** Redacted [redacted]
**City:**
**State:**
**Zip Code:**
**Country:**
**Phone:**
**Email Address:**

**Plaintiff certifies that:**

1. Plaintiff has reviewed a complaint and authorized its filing or the filing of an amended complaint.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

**Purchases:**

| Type of Security | Date | Shares | Unit Price |
|---|---|---|---|
| Common Stock | 06/18/2026 | 2,500 | $8.10 |

**Sales:**

| Type of Security | Date | Shares | Unit Price |
|---|---|---|---|
| Common Stock | 07/01/2026 | 2,500 | $5.27 |

**I have not sought to serve as a representative party on behalf of a class under the federal securities**

**laws during the last three years, except if set forth below.**

I declare and certify under penalty of perjury, under the laws of the United States of America, that the foregoing information is true and correct. **YES**

By Signing below and submitting this certification form electronically, I intend to sign and execute this certification pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis. **YES**

Date of signing: 07/22/2026 15:21:08 at Eastern Standard Time, USA

